Argued and submitted November 7, 1980,
affirmed March 17, 1981

NELSON,
*Petitioner,*

*v.*

HUGHES,
*Respondents,*

(No. 78-200-E, CA 15825, SC 27125)

625 P2d 643

Donald H. Coulter of Myrick, Coulter, Seagraves & Myrick, Grants Pass, argued the cause and filed a brief for petitioner.

Michael L. Mowrey of Brown, Hughes, Bird & Lane, Grants Pass, argued the cause and filed a brief for respondents.

Before Tongue, Presiding Chief Justice, and Howell,** Lent, Linde, Peterson, and Tanzer, Justices.

PETERSON, J.

**Howell, J., retired November 30, 1980.

## PETERSON, J.

This quiet title suit involves a dispute between contract purchasers whose land sale contract was prior in time, but unrecorded, and a subsequent purchaser — a grantee under a deed — whose deed, though subsequent in time, was recorded. The disposition of the case turns on the allocation of the burden of proof to establish that the subsequent purchaser was or was not a bona fide purchaser for value without notice of the prior purchaser's claim. The Court of Appeals imposed the burden of proof upon the subsequent purchaser and reversed the lower court. We affirm the Court of Appeals.

### THE FACTS

The facts are without substantial dispute. In August, 1961, the defendants entered into a land sale contract with Robert and Betty Lou Dolands for the purchase of property in Josephine County. The land sale contract contained a metes and bounds description, was not acknowledged, and was not recorded at that time. A deed was placed in escrow.

The Dolands also owned adjoining land, which was subsequently platted and subdivided. In August, 1962, the Dolands deeded two of the subdivided lots to the plaintiff.[1] Plaintiff recorded the deed on August 29, 1962. On March 30, 1964, the land sale contract between the defendants and the Dolands was recorded in the Miscellaneous Records of Josephine County, Oregon. The defendants later paid off the land sale contract, and recorded the deed to their property on February 13, 1979.

Part of the land sold to the plaintiffs overlapped the property described in the defendants' land sale contract. Plaintiff filed suit to quiet title, asserting her title through the recorded deed of August, 1962. Defendants answered and counterclaimed, seeking to quiet their title, alleging their interest under the 1961 land sale contract. Defendants did not allege that the plaintiff was not a bona fide purchaser for value and without notice. Plaintiff did

---

[1] The plaintiff originally bought the lots with her husband. When their marriage was dissolved, the former husband deeded the property to plaintiff.

not allege her bona fide purchaser status in her complaint, her reply, or in her answer to defendants' counterclaim.

The trial court entered a decree quieting plaintiff's title.

### THE STATUTES

At the time of the sales to the parties, ORS 93.640(1) provided:

> "Every conveyance affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent purchaser of the same real property or any portion thereof, in good faith and for a valuable consideration whose conveyance is first filed for record, and as against the heirs and assigns of such purchaser."

In 1973, Oregon Laws 1973, ch 696, § 19, amended ORS 93.640 to read in pertinent part:

> "(1) Every conveyance, deed, land sale contract or other agreement or memorandum thereof affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance, deed, land sale contract or other agreement or memorandum thereof is first filed for record, and as against the heirs and assigns of such subsequent purchaser. * * *"

### THE PLAINTIFF'S CONTENTIONS

The plaintiff contends:

1. Recording statutes are liberally construed to accomplish their purposes. Applying such liberal interpretative policy, executory land sale contracts were recordable within those types of statute which deal with recording of "conveyances" of land.

2. Plaintiff was not obligated to anticipate defenses to her quiet title cause of suit. If defendants desired to claim that plaintiff was not a bona fide purchaser under such quiet title complaint, they should have affirmatively raised that defense.

3. The burden should fall on the one whose failure to invoke the protection of the recording acts caused the dispute.

4. The evidence in the record, taken in conjunction with the statutory presumptions under ORS 41.360, made out a sufficient prima facie case of bona fide purchaser status for plaintiff.

## DISCUSSION

As stated above, the disposition of this case turns on the allocation of the burden of proving that the subsequent purchaser was or was not a bona fide purchaser for value without notice of the prior purchaser's claim. We will first examine the policies which operate in determining the allocation of the burden of proof and will then look at prior decisions of this court which relate to the issue at hand. Before doing so, however, it is appropriate to focus upon some aspects of this case as to which there can be no disagreement.

■ The original conveyance from the Dolands to the defendants transferred the disputed property to the defendants. The Dolands thereafter owned only a security title, the vendors' interest under a land sale contract. There can be no disagreement that the defendants' contract, though unrecorded, was valid as a conveyance of equitable title to them. Therefore, the subsequent conveyance by the Dolands to the plaintiff at most conveyed the vendors security interest in the form of legal title, for the grantors had nothing left to convey.

In order for the plaintiff's interest to be effective, she must be a purchaser "* * * in good faith and for a valuable consideration whose conveyance [was] first filed for record * * *." The plaintiff's displacement of the defendants' validly obtained interest arises only by virtue of the fact that the statute so provides.[2]

Finally, there can be no dispute that if the defendants' unacknowledged land sale contract was recordable, and had been recorded, no question as to title would exist. In that sense, the defendants' "fault" in failing to record is a factor to weigh in allocating the burden of proof.

### Policies involved in allocating the burden of proof

Allocation of the burden of proof has vexed courts and commentators for decades. There are no fixed rules in

---

[2] G. Osborne, Handbook of the Law of Mortgages § 208 (2d ed 1970).

allocating the burden of proof. One commentator, after discussing various factors which are involved, apparently despaired of concluding that any test was determinative and concluded his discussion by saying that

> "* * * the allocation of the burden is to be determined by considerations of fairness, convenience and policy. Such considerations require the exercise of a sound judgment * * *"[3]

The factors which have been considered in allocating the burden of proof include the following:

1. Precedent;[4]

2. Whether the facts are within the peculiar knowledge of a party;

3. Whether the party has the burden of pleading the affirmative allegation;

4. Upon whose case is the existence of the fact essential;

5. Probability. The extent to which a party's contention departs from conduct which would be expected in the light of ordinary human experience;

6. Whether disfavored contentions (fraud, contributory negligence, statute of limitations, truth in defamation) should be handicapped;

7. In case of a statute, whether the application of the statute is essential to a party's right to recover;

8. In case of a statute, the policy which the statute aims to effect;

9. Timing. Whether matters occurring after the accrual of a cause of action should be treated as affirmative defenses;

10. Whether the burden should be imposed upon the one who pleads the facts;

---

[3] E. Morgan, Basic Problems of Evidence 28 (1962).

[4] Oregon precedents on allocation of the burden of proof in cases involving bona fide purchasers will be discussed below. They point toward the conclusion that the subsequent purchaser should be required to plead and prove the status of a good faith purchaser without notice.

11. Whether the burden should be imposed on the one who invokes the judicial remedy.[5] Looking at factors 2 through 10 listed above, it appears that the factors most relevant to this case are factors 2, 4, 7, 8, 10, and 11.[6]

Factor 2 (whether the facts are within the peculiar knowledge of a party). Professor Cleary suggests the fairness of allocating the burden of an element of proof to the party who more likely is able to produce such evidence.[7] This principle was recognized and applied in *Sorenson v. Kribs*, 82 Or 130, 161 P 405 (1916). In this case the evidence is clearly within the power of the plaintiff to produce, and one or two questions to the plaintiff could have established her good faith. Though this factor is not determinative, we think that it is entitled to consideration.[8]

Factors 4 (upon whose case is the existence of the fact essential) and 7 (whether the application of the statute is essential to a party's right to recover). These two factors are assuredly important in this case. The validity and enforceability of the plaintiff's claim is solely dependent upon the fact that she was a subsequent purchaser in good faith and for a valuable consideration. Unless that be the fact, the defendants own the property and the plaintiff does not. With a showing of such fact, the plaintiff owns the property and the defendants' claim is "void," according to

---

[5] Some of these eleven factors are discussed in the following authorities:

E. Cleary, *Presuming and Pleading: An Essay on Juristic Immaturity,* 12 Stan L Rev 5 (1959); F. James, Jr., and G. Hazard, Jr., Civil Procedure § 7.8 (1977); J. Maguire, Evidence 179 (1947); E. Clearly, McCormick's Handbook of the Law of Evidence § 337 (2d ed 1972); E. Morgan, Basic Problems of Evidence 26-28 (1962); J. Wigmore, Evidence § 2485 (3d ed 1940).

[6] Factor 3 (whether the party has the burden of pleading the affirmative allegation) may be relevant, particularly where there is precedent requiring such pleading. However, the burden of proof does not follow the burden of pleading in all cases. See E. Morgan, Basic Problems of Evidence 27-28 (1962) and F. James and G. Hazard, Civil Procedure 250-251 (2d ed 1977).

Factors 5 (probability in light of human experience) and 6 (whether disfavored contentions should be handicapped) appear to be of little relevance in this inquiry.

[7] E. Cleary, *Presuming and Pleading: An Essay on Juristic Immaturity,* 12 Stan L Rev 5, 12 (1959).

[8] This factor would be less significant if the plaintiff were grantee of the subsequent purchaser, in which case the facts might not be peculiarly within her knowledge.

the statute. This analysis points toward the conclusion that there must be a showing that the subsequent purchase was in good faith and for consideration, and to a holding requiring the subsequent purchaser to prove the application of the statute.

At the same time, such an analysis tends to beg the question by assuming that there must be a *showing* (by the presentation of evidence, in the usual case) that the subsequent purchase is in good faith and for value. Some courts have held that the one claiming under a prior unrecorded conveyance has the burden of proving that the subsequent purchaser had notice of the earlier conveyance,[9] in which case if there is no *showing,* one way or the other, as to the bona fideness of the subsequent purchaser, the subsequent purchaser prevails. Other courts hold that the one who claims priority as a bona fide purchaser over an unrecorded earlier conveyance has the burden of proving the status of a bona fide purchaser for value without notice.[10]

Notice statutes of this type fall into two classes. One type (which follows the Massachusetts form) is along these lines: "A conveyance * * * shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it is recorded." Under this type of statute an unrecorded conveyance is not valid (as against a bona fide purchaser without notice) "unless it is recorded." Recording determines validity in such a contest. The second type of statute is similar to ORS 93.640. Under this type of statute, the unrecorded conveyance is valid, and the contest is determined by three factors: (1) the good faith of the subsequent purchaser; (2) whether the subsequent purchaser paid "a valuable consideration"; and (3) whether the subsequent purchaser's conveyance is first filed for record.[11] The

[9] See cases cited in H. Tiffany, The Law of Real Property 107-108, n 81 (2d ed 1939).

[10] *Id.* n 78.

[11] According to the editors of IV American Law of Property 633-634, § 17.35 (1952), under the former type, invalidity of the unrecorded instrument is the rule, validity the exception. Under the second type, validity is the rule and voidness is the exception, and the burden of establishing good faith and lack of notice is upon the second purchaser.

following quote from an early New Jersey case reflects such analysis:

"* * * I confess that to my mind the language of the statute indicates no shifting of the burden of proof. The unrecorded instrument is not made invalid generally; it is made invalid only as to certain classes of persons * * *. Logically, therefore, it would seem that one in order successfully to claim the benefit of the statutory provision must bear the burden or proving himself to be within the class of persons as to whom, only, the contract is declared invalid." *McVoy v. Baumann,* 93 NJ Eq 360, 117 A 717, 723, aff'd 93 NJ Eq 638, A 725 (1922).

■    ORS 93.640(1) does not make recording an additional conveyancing formality. The unrecorded contract is void only as between it and a conveyance to a subsequent purchaser in good faith for value who first records.

Factor 8 (the policy which the statute aims to effect). As to this factor, Professor Corwin W. Johnson has written that one of the purposes of the recording acts is to modify the traditional common law doctrine that subsequent purchasers, no matter how bona fide, get no better title than the transferor owned. As to the policy question involved in this case, Professor Johnson writes:

"A basic policy question is whether emphasis should be upon penalizing those who fail to record or upon protecting those who deserve protection. Conceivably, strict adherence to the penalty approach could lead to requiring recordation as essential to the validity of a deed, even as to the grantor, in addition to the requirements of delivery and writing. On the other hand, it would be consistent with the protection approach to regard unrecorded deeds void only as to those who actually examine the records and who substantially change their positions in reliance thereon. * * * (Footnotes omitted.)

"The measure of protection actually afforded by the recording system in operation is significantly affected by location of the burden of proof on the issues of notice and valuable consideration. If possible, this question should be resolved by reference to the underlying purposes of recordation. It would be reasonable to say that if the dominant purpose of the recording system is to encourage recording by penalizing failure to record, the burden of proof should be upon the one who did not record. On the other hand, if protection of designated groups is the aim, it might follow

that the burden should be upon those seeking to bring themselves within the favored categories. An analysis in terms of policy produced the conclusion by one authority that the burden should be placed 'squarely in all cases on the holder of the prior unrecorded instrument.' Unfortunately, the decided cases in the main are not characterized by a purpose-oriented approach to the problem. Authority can be found for almost every conceivable position: burden on one who failed to record; burden on one claiming to be a subsequent purchaser without notice; burden on one who failed to record if his interest was equitable rather than legal; burden on purchasers but not on creditors; and burden on purchasers as to consideration but not as to notice.

"The rationalizations offered are as diverse as the results. One technique is to attach great significance to the structure of statutory phrases, in a manner reminiscent of the refinements of the distinction between vested and contingent remainders. If the statute provides that 'no deed. . . shall take effect as regards the interests and rights of third parties [subsequent purchasers] until presented ... for the recording,' this means that the legislature intended the burden to be on the one who failed to record, while a statutory declaration that an unrecorded deed is 'void as to . . . subsequent purchasers' reveals intent to put the burden on the purchaser. * * *" (Footnotes omitted.)[12]

Factor 10 (whether the burden should be imposed upon the one who pleads the facts) is not involved in this case, for neither the plaintiff nor the defendants made any allegation concerning whether the plaintiff was a good faith purchaser for value. It is appropriate to observe, however, that merely because a party makes an allegation, it does not follow that the party has the burden of proof on that issue.

As for factor 11 (whether the burden of proof should be imposed upon the one who invokes the judicial remedy) we question the desirability of a rule which depends upon who is plaintiff and who is defendant. While the general burden of proof is normally upon the plaintiff, it is preferable that the rule be certain, not dependent upon who brings the action or suit.

---

[12] C. Johnson, *Purpose and Scope of Recording Statutes,* 47 Iowa L Rev 231, 237-238 (1962).

■    The strongest point in the plaintiff's favor is that the defendants' failure to record should not result in the imposition of a burden upon the plaintiff. This is a valid contention, one which has been followed by a number of courts (see note 9, above). Even so, most of the other factors point to the burden being imposed upon the plaintiff. The evidence to prove her good faith is within her knowledge (factor 2), and her rights, if any, arise solely by reason of the statute (factors 4 and 7). We believe that the plaintiff should be required to prove that the statute applies, and that she was a good faith purchaser for value who first recorded.

### Oregon precedents

We have found no Oregon case that states, as between a party who failed to record his interest in land and a subsequent purchaser of the same property, which party has the burden of alleging and proving whether the subsequent purchase was or was not "in good faith and for a valuable consideration." However, prior decisions of this court indicate that the burden should be placed on the subsequent purchaser.

In *Jennings v. Lentz*, 50 Or 483, 93 P 327 (1908), the plaintiff brought suit to quiet title against the defendant, an attaching creditor. Under the recording statute at that time, every conveyance of real property which was not recorded within five days of the execution thereof was void against any subsequent bona fide purchaser who recorded first. B & C Comp § 5359 (the precursor to ORS 93.640). Also, under the existing statutes an attaching creditor was given the status of a bona fide purchaser. B & C Comp § 302. (Now ORS 29.150). The confrontation was thus between a prior, unrecording party and a subsequent bona fide purchaser.[13] In allocating the burden of proof, the court stated:

"* * * But, in construing these acts [the attachment statutes], it has been repeatedly held, and has become a settled rule in this State, that an attaching creditor, although placed on an equality with a purchaser by this

---

[13] It is true that under B & C Comp § 5359 the unrecorded conveyance was void against only subsequent bona fide purchasers who recorded first. However, the fact that an attaching creditor was not subject to any recording responsibility does not undermine the analysis of the earlier decisions.

statute, cannot insist on any greater protection than would be granted to such purchaser; and, in suits in equity, the claim of a *bona fide* purchaser for value is an affirmative defense, which must be pleaded, thereby placing the burden of proof in such cases upon the party relying thereon * * *." 50 Or at 487.

Similarly, in *Bailey v. Hickey,* 99 Or 251, 195 P 372 (1921), the plaintiff, who had failed to record, brought suit against a later attaching creditor to have a cloud on his title removed. Despite the fact that the applicable statute, Or L § 301, gave the later attaching creditor the status of a bona fide purchaser, the court put the burden of alleging and proving bona fide purchaser status on the attaching creditor.

Other cases, although not involving statutes describing unrecorded conveyances as void, can nonetheless be cited for the proposition that in suits in equity, the party asserting bona fide purchaser status must allege and prove such status.[14] In *Murray v. Wiley,* 169 Or 381, 127 P2d 112, 129 P2d 66 (1942), the plaintiff brought suit to establish that a deed to the defendant, although in absolute form, was in truth a second mortgage given by plaintiff to defendant to secure a prior debt. Defendant had assigned its interest in the property to a third party, who claimed bona fide purchaser status. The court set out the burden of proof as follows:

"The burden was upon the defendant purchasers to allege and prove that they were purchasers for valuable consideration, without notice of the equitable claim of the plaintiff.

"'* * * In suits in equity, the claim of a bona fide purchaser for value is an affirmative defense, which must

---

[14] The Court of Appeals alluded to this general equitable principle, stating at 46 Or App 357 n 5:

"*Raymond v. Flavel,* 27 Or 219, 40 P 158 (1895), was not a suit to quiet title, but was a suit to declare defendant a trustee of certain real property and is one of the earliest cases deciding who has the burden of proving bona fide purchaser status in an equitable proceeding. The Court said:

"'"* * * [U]pon proof of the equitable title of plaintiff, a defendant who relies upon the defense of being an innocent purchaser in good faith must set up the union of legal title with a superior equity arising from payment of the money and receiving the conveyance without notice, and with a clear conscience." * * *' 27 Or at 247."

be pleaded, thereby placing the burden of proof in such cases upon the party relying thereon.' * * *" 169 Or at 405.[15]

*Stevens v. American Savings Institution, Inc.,* 289 Or 349, 613 P2d 1057 (1980), is pertinent, as well. This was a suit to rescind a conveyance of timberland made by plaintiff to one defendant and the subsequent conveyance by the defendant to a third party. The third party claimed that since it had bought the land for value and without notice of any claims plaintiff had concerning the land, it should be declared the owner. This court reiterated the holding in *Murray v. Wiley,* 169 Or 385, 127 P2d 112, 129 P2d 66 (1942), stating that "in suits in equity, the claim of a bona fide purchaser for value is an affirmative defense and the burden of proof is on the party asserting the defense." 289 Or at 355.

Finally, in *Matsuda v. Noble et al and De Coster,* 184 Or 686, 200 P2d 962 (1948), which involved a statute governing priority of attaching creditors, the court reaffirmed the rule stated in *Jennings,* stating:

"* * * It is equally well established that the burden is upon the attaching creditor to bring himself within the terms of the statute by alleging and proving that he had no notice or knowledge of the outstanding equity at the time of the attachment. * * *" 184 Or at 703-04.

We see no reason why the principle applied in these cases should not be applied to a contest between an unrecording party and a subsequent purchaser.

The Court of Appeals cited two early ejectment cases (which were actions at law), *McIntyre v. Kamm,* 12 Or 253, 7 P 27 (1885), and *Advance Thresher Co. v. Esteb,* 41 Or 469, 69 P 447 (1902), for the proposition that "* * * the grantee under an unrecorded deed had the burden of proving that a subsequent purchaser of the property who recorded his deed had notice of the prior unrecorded deed." *Nelson v. Hughes,* 46 Or App 353, 357, 611 P2d 688 (1980). The court stated that "* * * later cases involving suits in equity to quiet title or remove a cloud state the general rule

---

[15] Arguably, *First Sav. Bank v. Linnhaven Orchard Co.,* 89 Or 354, 174 P 614 (1918), can be cited for the same equitable proposition where the party asserting bona fide purchaser status is the plaintiff.

to be that one claiming to be a bona fide purchaser has the burden of alleging and proving that status," *Id.,* and questioned why the rule at law should be different from suits in equity.

We find no support for the plaintiff's position apart from the two ejectment cases *(Kamm* and *Esteb)* discussed above.

Ejectment cases are actions at law brought under ORS 105.005 et seq. Whether there is a rational basis for a different rule in actions at law, we need not decide. The applicable rule in suits to quiet title is well settled in Oregon law, and for the reasons stated above, we think that the rule is correct and should be adhered to.[16]

■ As for the plaintiff's assertion that she "made out a sufficient prima facie case of bona fide purchaser status," we have carefully searched the record and are unable to find any evidence beyond the testimony of the plaintiff that she was the grantee under the deed, that the lots were undeveloped, and that she claimed ownership under the recorded chain of title. This is insufficient to prove that plaintiff was a bona fide purchaser without notice.[17]

---

[16] We express no opinion as to the application of ORCP 2, which provides:

"There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."

to the holdings in *Kamm* and *Esteb.*

[17] The Court of Appeals opinion also stated:

"Here, plaintiff made out a prima facie case by the introduction of her recorded deed to the disputed property. The burden *of going forward* then shifted to defendants to show their interest in the property. When defendants did so by the introduction of the land sales contract executed, albeit not recorded, prior to plaintiff's deed, the burden of going forward shifted back to plaintiff to show that she came within the purview of ORS 93.640 and had superior title by virtue of having taken the property without notice and for a valuable consideration. Plaintiff did not do so, although she did testify." (Emphasis in original.) 46 Or App at 358, 359.

Notwithstanding repeated references in earlier decisions of this court that the burden of going foward shifts under various circumstances, we are not sure that that is, strictly speaking, true, and we suspect that such statements lead to confusion. When a party having the burden of proof submits sufficient evidence to

## Affirmed. Costs to neither party.

support a recovery on a claim or a defense asserted by that party, it is said that the party has established a prima facie case or defense.

However, unless the evidence is so strong that but one conclusion can be drawn from the evidence, the trier of fact is free to hold for or against the party who created the prima facie case. But there is no shifting of the burden of going forward. The party who resists the claim of one who has established a prima facie case may, but need not, put on evidence to meet or rebut the evidence previously presented by the opponent. For any number of reasons, tactical or otherwise, the party who is resisting the claim of one who has made a prima facie claim or defense may opt not to put on any evidence.